IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BRENNAN MORRISON**, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. **3:05-CV-1821-L** |
| | § | |
| **DALLAS COUNTY COMMUNITY** | § | |
| **COLLEGE DISTRICT and BRENT** | § | |
| **DUDENHOEFFER in his official** | § | |
| **and individual capacities,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Motion for Summary Judgment, filed October 16, 2006. After considering the motion, response, reply, record, and applicable law, the court **grants** Defendants' Motion for Summary Judgment.

### I.     Factual and Procedural Background

Plaintiff Brennan Morrison ("Plaintiff") brings claims of race discrimination and retaliation against Defendants Dallas County Community College District (the "District") and Brent Dudenhoeffer (collectively, "Defendants"), and a claim for defamation against Dudenhoeffer. Pl.'s First Am. Compl. (June 26, 2006). Defendants move for summary judgment on Plaintiff's claims. Defendants and Plaintiff filed appendices in support of their respective positions.[1]

---

[1] Plaintiff filed an 825-page appendix in opposition to the motion for summary judgment. The appendix lacks a table of contents and includes the complete or nearly complete transcripts of five depositions. This unwieldy appendix violates the scheduling order in this case. *See* Scheduling Order ¶ 3 (Mar. 13, 2006) ("***When submitting materials on dispositive motions, the parties are instructed not to unduly burden the record, and shall submit only that evidence which is actually relevant to supporting or opposing the dispositive motions of the party. For example, do not submit the entire deposition of a witness; submit only those pages that are necessary to identify the deponent's connection to the case and establish the point a party desires to make***.") (emphasis in original). Plaintiff's citations in some portions of the briefing also violate Local Rule 56.5(c) because he omits citation or the citation points to unrelated evidence. The court is under no "duty to sift through the record in search of evidence to support a party's opposition

**Memorandum Opinion and Order – Page 1**

Plaintiff was employed by the District as Natatorium Supervisor at North Lake College in Irving, Texas on November 24, 2003 and worked for the District until he was terminated on February 17, 2005. Defs.' App. 16, 272.[2] The Natatorium is operated as a partnership between the District, the City of Irving, and the Irving Independent School District. Pl.'s App. 593-602. Pursuant to the contract governing the Natatorium, the City of Irving "shall designate a City Aquatic Supervisor who shall serve as the City's representative and as manager of the North Lake College Natatorium." *Id*. at 594. Included in the list of the City Aquatic Supervisor's responsibilities are "Hire part-time employees," and "Supervise and train full and part-time employees." *Id*. at 595. The contract also provides for the District to hire certain employees:

> College District shall appoint all jointly funded Natatorium Staff subject to approval by all parties. . . . College District shall send notice to the other parties inviting them to participate in the hiring process of all Natatorium full-time staff. This staff shall be hired according to College District hiring guidelines. Under direct supervision of the City Aquatic Supervisor, the Natatorium management will oversee the operation of natatorium services. . . . College District shall designate an administrator who will ensure College District employment guidelines are followed with regard to College District employees, including evaluation of full-time personnel.

*Id*. at 595-596. The contract also states that "[e]mployees of all parties will be managed and evaluated in accordance with their respective institution's personnel procedures and policies." *Id*. at 596. Morrison received a copy of the Natatorium Contract. Pl.'s App. 92. He also received a job

---

to summary judgment." *Adams v. Travelers Indem. Co. of Connecticut*, 465 F.3d 156, 164 (5th Cir. 2006). Accordingly, the court refers to the portions of the appendix cited by the parties in determining this motion. The court frowns on this type of mass submission, as it unnecessarily burdens the record and consumes scarce judicial resources.

[2]Plaintiff alleges that he was the only African-American employee at the Natatorium, but there is no competent summary judgment evidence regarding the racial makeup of the Natatorium staff. In support of this allegation, Plaintiff cites his appendix at page 566, a page from Dudenhoeffer's deposition relating to Plaintiff's filed grievances without reference to his race.

**Memorandum Opinion and Order – Page 2**

description, which included his principal duties and responsibilities. Defs.' App. 18, 115. The job description, under the heading "Reporting Relationship," states "Varies to meet organizational needs." *Id*. at 115.

The parties do not dispute that Plaintiff was counseled regarding his responsibilities in October 2004. During that month, Morrison and Dudenhoeffer began having weekly meetings with Ella Barber ("Barber"), North Lake College's Director of Human Resources, and Kris Yeldell ("Yeldell"), a member of the District's Professional Support Staff Association. Defs.' App. 204-205. Dudenhoeffer testified that at these meetings, he attempted to clarify Plaintiff's chain-of-command supervision and also the expectations for Plaintiff's job performance. *Id*. at 207-209. Despite these meetings, Plaintiff testified that he received a written reprimand from Dudenhoeffer in October 2004 regarding his work hours and lunch breaks, Pl.'s App. 104; Defs.' App. 117, and another written memorandum on November 4, 2004, relating to the District's policy regarding leave forms and Plaintiff's working hours. Defs.' App. 24-25, 118. Dudenhoeffer sent Morrison a third memorandum on November 10, 2004, setting out specific guidelines relating to Plaintiff's responsibilities for submitting time sheets. *Id*. at 119-120.

The District decided to place Plaintiff on decision-making leave on December 8, 2004. *Id*. at 8. Pursuant to the District's employment policies:

> If an employee has performance deficiencies, a supervisor shall give the employee a decision-making leave day for which the employee will be compensated. Before a decision-making leave day is given, a supervisor shall provide an employee with a written summary of the employee's deficiencies, a copy of the employee's current job description, a copy of the employee's most recent performance evaluation, and a copy of this regulation.
>
> During the leave, an employee shall decide whether he or she wishes to continue employment with the District and, if so, the employee

**Memorandum Opinion and Order – Page 3**

>must agree to take positive steps to correct past performance deficiencies. If an employee decides to continue employment, a reevaluation (probation) period with specific performance standards will be established by the supervisor after a conference with the employee for a period of no less than three months and no more than six months.

*Id*. at 150.

Plaintiff filed a grievance against Dudenhoeffer on December 13, 2004. Pl.'s App. 628-630. Morrison compiled a list of his complaints, which included nine separate concerns. *Id*. at 629-630. This list included the following questions and concerns: (1) whether the City and District's contract or the District job description controlled Plaintiff's employment; (2) his chain-of-command; (3) the interaction between District policy and state law; (4) timeliness of purchase orders; (5) day-to-day workflow of Natatorium; (6) relaying information; (7) weekly meetings; (8) gap between the District and the City; and (9) time sheets. *Id*. Morrison requested a meeting with Rene Castilla, the Executive Dean of North Lake College and Dudenhoeffer's supervisor. Pl.'s App. 628. Yeldell also attended the meeting and took notes. Defs.' App. 298-299. Castilla responded to Plaintiff's grievance by a memorandum dated January 3, 2005. *Id.* at 148.

On December 15, 2004, Dudenhoeffer met with and informed Morrison that he was being placed on decision-making leave. Defs.' App. 121-138. A memorandum dated December 15, 2004 lists four reasons for the decision-making leave: (1) failure to timely deliver time sheets; (2) incomplete time sheets; (3) unauthorized hours change; and (4) failure to seek approval for leave. *Id*. at 122. Morrison returned to work on December 17, 2005 and received a memorandum titled "Progress Discussion Update" dated the same day. *Id*. at 139-140.

Morrison received another written reprimand on January 25, 2005 regarding notification of special events in the Natatorium. *Id*. at 141. He also received a second reprimand dated January

**Memorandum Opinion and Order – Page 4**

25, 2005 regarding leave forms. *Id.* at 142. Morrison's employment was terminated on February 17, 2005. *Id.* at 272. In a memorandum titled "Notice of Termination," Morrison was informed that his employment was terminated effective February 17, 2005 for "ongoing job performance deficiencies." *Id.*

On February 27, 2005, Morrison sent a letter to Dr. Linda Glasscock, the president of North Lake College, seeking to appeal his termination. *Id.* at 143. Plaintiff stated that he believed his termination "was discriminatory based on the fact that I'm black and for no other fair or realistic reason." *Id.* Morrison filed a Charge of Discrimination with the Equal Employment Opportunity Commission on March 10, 2005. Defs.' App. 144-145. Thereafter, Plaintiff filed this lawsuit alleging claims of race discrimination, retaliation, and defamation. Defendants now move for summary judgment on each of Plaintiff's claims.

## II.   Legal Standard for Summary Judgment

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make

"credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

**III.    Analysis**

   **A.    Defamation**

Defendant Dudenhoeffer moves for summary judgment on Plaintiff's defamation claim. Plaintiff's claim is based upon Dudenhoeffer's alleged statement that Plaintiff was terminated for fighting on the job. Compl. ¶ 27. Plaintiff argues that the defamatory statement in this case was a statement by Dudenhoeffer to Rosalyn Patterson that Plaintiff was terminated because he got into a fight at the Natatorium. Pl.'s App. 248. Plaintiff alleges that this statement has caused him injury. *Id*. at 263. Dudenhoeffer argues that Plaintiff's claim must be dismissed because he has not alleged slander *per se* or any damage.

Under Texas law, a plaintiff who alleges defamation must show that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex.1998) (citing *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989)). Texas recognizes that a defamatory oral statement may be slander *per se* or slander *per quod*. *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App. – Waco 2005, no pet.). "To be considered slander *per se*, the statement must (1) impute the commission of a crime; (2) impute contraction of a loathsome disease; (3) cause injury to a person's office, business, profession, or calling; or (4) impute sexual misconduct." *Id*. To recover damages, there are differences based upon the kind of statement alleged:

> [B]efore a plaintiff can recover for defamation per quod, the plaintiff must carry his burden of proof on both the existence of and amount of damages. On the other hand, statements that are defamatory per se are actionable without proof of injury. Thus, if the alleged statements have been classified as defamatory per se, general damages are presumed without requiring specific evidence of harm

**Memorandum Opinion and Order – Page 7**

>> to the plaintiff's reputation thereby entitling the plaintiff to recover,
> at a minimum, nominal damages.

*Texas Disposal Sys. Landfill, Inc. v. Waste Mgm't Holdings, Inc.*, 219 S.W.3d 563, 580-581 (Tex. App. – Austin 2007, pet. filed) (internal citations omitted).

### 1. Slander *Per Se*

Plaintiff argues that Dudenhoeffer's alleged statement is harmful to his office, business, or profession. Defendant responds that Texas courts have refused to hold that similar statements are slander *per se*. Defendant also contends that Plaintiff has failed to provide any competent evidence of the publication of the statement because he relies on his own hearsay testimony that Patterson told him that Dudenhoeffer told Patterson that Morrison was terminated for fighting.

The court determines that the alleged statement is not slander *per se* and finds that the most similar Texas case is *Roberts v. Davis*, 160 S.W.3d 256 (Tex. App. – Texarkana 2005, pet. denied). In that case, the court found that certain letters criticizing an employee's job performance were not defamatory. *Id*. at 262. The letter was determined to be

> a critique by [Plaintiff's] supervisors of her job performance. It accuses her of deliberate obstruction and deteriorating behavior in her work and her relationships with other employees. . . . The letter does not accuse her of any crime or question her honesty, integrity, or virtue, and all the criticism is related to her work, which a natural and proper concern on the part of an employee's supervisors or employer.

*Id*. Plaintiff does cite one case that held that statements related to a plaintiff's profession are slander *per se. Tatum v. Liner*, 749 S.W.2d 251, 258 (Tex. App. – San Antonio 1988, no writ) ("Statements that appellee had trouble on the job because of her absences and that appellee made misrepresentations in order to get a higher salary clearly, on their face, relate to appellee's

**Memorandum Opinion and Order – Page 8**

profession."). The court, however, finds that the more recent *Roberts* case, which did not involve any allegation that plaintiff made misrepresentations, is more similar to this statement in this case.

Plaintiff relies on several other cases that the court determines are distinguishable from this case because they involved significantly more serious allegations of wrongdoing. *See Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 921 (Tex. App. – Corpus Christi 1991, writ dism'd w.o.j) (considering statements that Plaintiff "was going to lose his stockbroker's license, was in big trouble with the Securities and Exchange Commission ("SEC"), and would never work again as a stockbroker"); *Bradbury v. Scott*, 788 S.W.2d 31, 38 (Tex. App. – Houston [1st Dist.] 1989, writ denied) (considering statement and evidence creating impression that plaintiff "had done something illegal"); *Tate v. Bradley*, 837 F.2d 206 (5th Cir. 1988) (considering Louisiana law). Accordingly, the court concludes that the alleged statement in this case is not slander *per se* and the court cannot presume damage to Plaintiff.

### 2. Damages

Defendant argues that the defamation claim must be dismissed because Plaintiff has admitted that he has suffered no damage from the alleged statement by Dudenhoeffer. Plaintiff asserts that the statement "caused [him] harm by Patterson viewing him in a different light." Pl.'s Resp. 25.

The court determines that Plaintiff has failed to provide evidence of any damage caused by Dudenhoeffer's statement. Plaintiff, can point to no evidence that he was damaged. Morrison cites four pages from his deposition, but none establishes any damage caused by Dudenhoeffer's alleged statement. The only testimony cited by Plaintiff is that he was harmed because "the people that did call up here called my direct line and for [Dudenhoeffer] to tell them that I was terminated, for him to tell them that I was fired is unlawful anyway." Pl.'s App. 263. Morrison does not know if he has

failed to be hired because of the statement. Defs.' App. 87, 93. There is no evidence that the statement about fighting at the pool caused damage, and any statements made by Dudenhoeffer that Morrison was terminated are truthful. "[T]ruth is an absolute defense to defamation." *Pardo v. Simons*, 148 S.W.3d 191, 186 (Tex. App. – Waco 2004, no pet. h.). Accordingly, because there is no evidence that the fighting comments caused damage to Plaintiff and any other alleged statements are truthful, there is no genuine issue of material fact as to the defamation claim. Dudenhoeffer is therefore entitled to judgment as a matter of law.

**B.     Race Discrimination**

Defendants also move for summary judgment on Morrison's claim for race discrimination brought pursuant to Title VII and 42 USC § 1981. Plaintiff's section 1981 claims are analyzed under the same evidentiary standard and same burden-shifting approach as cases brought pursuant to Title VII. *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999).

To survive a motion for summary judgment, a plaintiff in a Title VII or section 1981 discrimination case must first establish a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). Once this *prima facie* case has been established, there is a presumption of discrimination, and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802-04. If such a showing is made, the burden shifts back to the plaintiff to demonstrate that the articulated reason was merely a pretext for intentional discrimination. *Id.*

**Memorandum Opinion and Order – Page 10**

The third step of the *McDonnell Douglas* test has been altered by the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) (holding that in Title VII cases, the mixed-motive theory of discrimination is available in cases with circumstantial evidence of discrimination). In light of *Desert Palace*, the Fifth Circuit has modified the final step of *McDonnell Douglas*. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). In order to survive summary judgment under the modified *McDonnell Douglas* test, at the final step, a plaintiff must offer sufficient evidence to create a genuine issue of fact that either: (1) a defendant's reason is not true, but is instead a pretext for discrimination or (2) a defendant's reason, though true, is only one of the reasons for its conduct and that another "motivating factor" is the plaintiff's protected characteristic. *Id.*; *see also Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005) (same).

After a Title VII or section 1981 case reaches the pretext stage, the question to be decided for the resolution of a motion for summary judgment is whether a rational factfinder could find that the employer intentionally discriminated against the plaintiff on the basis of race. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). A "plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002), *cert. denied*, 539 U.S. 926 (2003). "Pretext-plus" is not required to support an inference of retaliatory discrimination. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," and may therefore be enough to prevent summary judgment or judgment

as a matter of law.  *See Reeves*, 530 U.S. at 148; *Sandstad*, 309 F.3d at 897.  This showing, however, is not always enough to prevent summary judgment "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148.  On the other hand, in the context of an unlawful discrimination or retaliation claim, summary judgment is inappropriate "if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [race] was a determinative factor in the actions of which plaintiff complains." *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 373 n. 23 (5th Cir.), *reh'g denied*, 232 F.3d 212 (5th Cir. 2000), *cert. denied*, 531 U.S. 1113 (2001) (quoting *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996)) (en banc).

       **1.**     ***Prima Facie* Case**

To establish a *prima facie* case of race discrimination, Plaintiff must establish that he (1) is a member of a protected class, (2) was subjected to an adverse employment action, (3) was qualified for his position, and (4) was replaced by someone outside of the protected class.  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007).  Defendants only dispute the second element and argue that the only adverse employment action suffered was his termination and that the decision-making leave does not rise to the level of an adverse employment action.

Plaintiff argues that he has made a *prima facie* case and argues that he was treated differently because of his race when placed on decision-making leave.  Morrison's decision-making leave day was a single paid day of leave and does rise to the level of an "ultimate employment decision" that

is an adverse employment action. *McCoy v. City of Shreveport*, ___ F.3d ___, 2007 WL 2000089 (5th Cir. July 11, 2007) (citing *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000)). Accordingly, Plaintiff's race discrimination claim can be based only upon the termination of his employment.

### 2.     Legitimate, Nondiscriminatory Reason for Termination

Because Plaintiff has established a *prima facie* case of discrimination with respect to his termination, the burden shifts to Defendants to show a legitimate, nondiscriminatory reason. Defendants argue that Morrison's termination was for his poor job performance, as documented by various memoranda and weekly meetings as outlined in the factual background. The court determines that Defendants have articulated a legitimate, nondiscriminatory reason for terminating Plaintiff's employment; that is, Plaintiff had repeated problems with submitting time sheets, his work hours, requests for leave, and scheduling special events in the Natatorium. Defendants reprimanded Plaintiff and provided detailed guidelines, but he continued to perform his job poorly, resulting in the termination of his employment.

### 3.     Pretext or Racial Motivation

Since Defendants set forth a legitimate, nondiscriminatory reason for Plaintiff's termination, the burden shifts back to Plaintiff, who must show either that: (1) Defendants' proffered reason is not true, but is rather pretext for discrimination or (2) Defendants' reason, though true, is only one of the reasons for its conduct and that another "motivating factor" is the Plaintiff's race. *Rachid*, 376 F.3d at 312.

Plaintiff argues that he was treated differently from co-workers because of his race, that Walter Ritchie, the City Aquatic Supervisor believed Dudenhoeffer treated Morrison differently

**Memorandum Opinion and Order – Page 13**

because of his race, and that Defendants' complaints about Plaintiff's job performance are untrue. Defendants contend that Plaintiff cannot dispute that he was repeatedly reprimanded and counseled for his performance and that he cannot show that his treatment was different because of his race.

"[T]o establish disparate treatment a plaintiff must show that the employer gave preferential treatment to another employee under nearly identical circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other employees." *Okoye v. University of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001). The court now turns to each instance of disparate treatment alleged by Plaintiff.

First, Morrison contends that he was treated differently from his co-workers and argues that the this difference was because of his race. Plaintiff argues that Richard Steiver, a white employee, was not terminated despite being caught sleeping on the job and that Gerald Ford, also white, was not fired despite watching pornographic material on his computer and playing games at work. Pl.'s Resp. 12. Defendants do not allege that Morrison engaged in such activities; they contend that his job performance issues were related to time sheets, leave issues, and the scheduling of special events. Because Plaintiff has failed to carry his burden in showing that these other employees were in "nearly identical" circumstances, these examples do not show his disparate treatment. Plaintiff also contends that he was treated disparately because another white employee, Deborah Cunningham, was accused of time sheet violations, including mismanagement and possible illegal activity. *Id.* at 13. Plaintiff alleges that she was not required to engage in weekly meetings and was not fired for an identical infraction. The very evidence that Plaintiff relies on, however, demonstrates that Defendants did not know about the severity of Cunningham's alleged violations until after she resigned. Pl.'s App. 471 ("Deborah Cunningham had already resigned, whenever this

**Memorandum Opinion and Order – Page 14**

was found."). While Dudenhoeffer testified that Cunningham did turn time sheets in late before she resigned, he also stated that Cunningham was not Natatorium Supervisor and that turning in time sheets was not a part of her job description. *Id*. at 472-473. There is no evidence that she repeatedly failed to comply with the District's guidelines or that she had issues with leave or special events, as Plaintiff did.

Second, Morrison relies on the testimony of Ritchie, who Plaintiff claims agreed with him that he was "being singled out because of his race." Pl.'s Resp. 14. Ritchie's testimony, however, establishes only that Morrison complained to Ritchie about Dudenhoeffer's treatment of him, and that in one situation where Dudenhoeffer made accusations against both Ritchie and Morrison, Dudenhoeffer used an "insinuating tone that it was about age, race, everything. No specifics." Pl.'s App. 68. The court finds that Ritchie's testimony does not show that race was a motivating factor in Plaintiff's termination.

Finally, Plaintiff contends that his chain-of-command was never specified and that the written reprimands and underlying reasons for his decision-making leave and termination were unwarranted. Plaintiff argues that it is undisputed that from the time of his hiring until October 2004, the parties agree that he reported to Ritchie. Resp. 17. The court does not find this to be true, but does determine that no one disputes that as of October 11, 2004, Dudenhoeffer clarified that while Ritchie was Morrison's "1st level" supervisor, Dudenhoeffer told Morrison that he was his "2nd level" supervisor and "what he says supercedes" Ritchie. Defs.' App. 306. This clarification occurred before Morrison received any written reprimand. Plaintiff argues that Dudenhoeffer's reliance on time sheets to terminate him is a "fabricated excuse." Resp. 20. Plaintiff, however, does not dispute that he received a memorandum outlining nineteen guidelines for completing the time

sheets, and he admits that he made mistakes even after receiving the memorandum. Defs.' App. 27-28.

The court determines that Plaintiff has not shown that the legitimate, nondiscriminatory reasons proffered by Defendants are pretextual or that race was a motivating factor in the decision to terminate Plaintiff's employment. Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's race discrimination claim.

### C.     Retaliation

Defendants have also moved to dismiss Plaintiff's claim for retaliation, based upon his filing an internal grievance against Dudenhoeffer. First Am. Compl. ¶¶ 25-26. Plaintiff argues that he was terminated only after he threatened to file a complaint against Dudenhoeffer. Resp. 23-24.

Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice" by the statute or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 USC § 2000e-3(a). To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) he engaged in a protected activity; (2) he experienced an adverse employment action following the protected activity; and (3) a causal link existed between the protected activity and the adverse employment action. *See Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003); *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001)*; Mota v. University of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001). The establishment of a *prima facie* case gives rise to an inference of retaliation. *Id*. This inference, in turn, shifts the burden of proof to the defendant, who must then articulate a legitimate nonretaliatory reason for the

**Memorandum Opinion and Order – Page 16**

challenged employment action. *Id*. Once the defendant asserts such a reason, the inference of discrimination raised by the *prima facie* case drops from the case. At this point, summary judgment is appropriate unless the plaintiff can raise a genuine issue of fact that the defendant's rationale is pretextual. *McDonnell Douglas*, 411 U.S. at 801-803.

Defendants argue that Plaintiff engaged in no protected activity. Plaintiff responds that the protected activity is his grievance against Dudenhoeffer, which was the subject of a November 4, 2004 e-mail and a December 13, 2004 meeting, and his complaints at meetings with Dudenhoeffer and Chris Michalski, a City of Irving employee and Ritchie's supervisor, and at meetings with Ritchie. Resp. 23-24. Plaintiff argues that he repeatedly claimed that he was being treated differently because of his race. Resp. 24.

Defendants argue that Plaintiff never made any complaint of racial discrimination until February 27, 2005, ten days after his employment was terminated. Defs.' App. 143. The documentation is consistent with this position. Yeldell took notes at all of the meetings with Plaintiff, but none of her notes reflects any discussion of race discrimination. *Id*. at 298-308. The November 4, 2004 e-mail simply states Plaintiff's intention to file a grievance against Dudenhoeffer, but does not mention the basis for his complaint or make any allegation of race discrimination. *Id*. at 149. Plaintiff actually filed his grievance on December 13, 2004 and met with Castilla that day. *Id*. at 72-74, 146-147. The written document contains nine items outlining Plaintiff's grievance. *Id*. at 146-147. None of these items refers in any way to Plaintiff's race or alleges race discrimination. *Id*. Plaintiff contends that he complained of unequal treatment and item 8 – "I'm trying to bridge the gap between North Lake and the City of Irving"– states "He does not apply DCCD policy and procedures equally." *Id*. at 147. This remark, on its face, does not complain of

**Memorandum Opinion and Order – Page 17**

race discrimination. Yeldell's notes do contain a line that reflects Morrison's request that "Brent treat his staff equally." *Id*. at 299. The notes, however, do not include any reference to race discrimination. *Id*. at 298-99. Plaintiff's deposition testimony makes clear that the issue of equal treatment referred to in the written complaint and in the meeting notes refers to his concern that Dudenhoeffer treated pool staff differently from other District employees. *Id*. at 79-80. Accordingly, Plaintiff's complaints about unequal treatment cannot be a basis for his claim of engaging in protected activity. Plaintiff maintains, however, that he did orally raise the issue of unfair treatment based upon his race at the meeting with Castilla. Resp. 24, Defs.' App. 81.

Plaintiff has raised an issue of fact as to whether he verbally raised the issue of race discrimination at the December 13, 2004 meeting with Castilla. Although the written documents do not reflect any complaint about race until after Morrison's employment was terminated, Plaintiff's deposition testimony is sufficient to raise a genuine question of material fact with regard to whether he engaged in protected activity.

Plaintiff alleges that both his decision-making leave day and his termination were adverse employment actions related to his grievance. Defendants do not dispute that Morrison experienced an adverse employment action in the termination of his employment. They argue, however, that any grievance related to race discrimination was made only after the decisions to place him on decision-making leave and to terminate had been made. Defendants also contend that there is no evidence of a causal link between Plaintiff's protected activity and the decision-making leave or the termination of his employment.

The evidence reflects that Defendants made the decision to place Plaintiff on decision-making leave on December 8, 2004. Defs.' App. 8. Plaintiff was not informed of this decision until

**Memorandum Opinion and Order – Page 18**

December 15, 2004. *Id*. at 121-138. Without considering the issue of whether decision-making leave rises to the level of an adverse employment action for a retaliation claim, the court concludes that Plaintiff cannot rely on the decision-making leave for his retaliation claim. The only possible protected activity occurred on December 13, five days after the decision about leave was made. Therefore, Plaintiff cannot establish that his leave was retaliation for his complaint to Castilla. There can be no causal connection because the protected activity occurred *after* the allegedly retaliatory decision was made.

Plaintiff has provided evidence that he may have raised the issue of race discrimination to Castilla during the December 13, 2004 meeting. Plaintiff, however, has not provided any evidence other than his own belief that his grievance ultimately led to his termination. He does not provide any evidence that Dudenhoeffer had any knowledge of the complaint made to Castilla. Dudenhoeffer testified that although he had briefly reviewed the written grievance, he did not know the substance of Morrison's complaint against him. Defs.' App. 222-224. Plaintiff's subjective belief is insufficient to demonstrate a causal link between his protected activity and the adverse employment action. *See, e.g.*, *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) (holding that discrimination cannot be shown simply by plaintiff's "own subjective belief that [defendant] discriminated against him"). Likewise, Plaintiff's reliance on the proximity of his complaint to Castilla to his termination does not carry the day on the retaliation claim:

> Close timing between an employee's protected activity and an adverse action against him may provide the "causal connection" required to make out a *prima facie* case of retaliation. However, once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive.

**Memorandum Opinion and Order – Page 19**

*Swanson v. General Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir.), *cert. denied*, 522 U.S. 948 (1997). Here, two months elapsed before Plaintiff's employment was terminated, Defendants had already decided to place him on decision-making leave before the meeting with Castilla, and Defendants have provided evidence of a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. Accordingly, the court concludes that because Plaintiff has asserted nothing more than his subjective belief that his firing was retaliatory, he cannot make out a *prima facie* case for retaliation. No genuine issue of material fact exists with his retaliation claim, and therefore, Defendants are entitled to judgment as a matter of law.

**IV.    Conclusion**

For the foregoing reasons, the court concludes that Defendants have shown that there is no genuine issue of material fact as to any of Plaintiff's claims. Accordingly, the court **grants** Defendants' Motion for Summary Judgment. The court **dismisses with prejudice** all of Plaintiff's claims against Defendants.

**It is so ordered** this 26th day of July, 2007.

*/s/ Sam A. Lindsay*
Sam A. Lindsay
United States District Judge